

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

MICHAEL G. HARRIS,

      Plaintiff,

Case No. 3:00-CV-1297-J-12MCR

v.

CORRECTIONS CORPORATION OF
AMERICA,

      Defendant.

---

## DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE MOTION FOR A NEW TRIAL OR TO ALTER OR AMEND JUDGMENT (REMITTITUR) AND MEMORANDUM OF LAW IN SUPPORT THEREOF

COMES NOW the Defendant, Corrections Corporation of America (hereinafter "Defendant" or "CCA"), by and through its undersigned attorneys, pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure and Rule 3.01 of the Local Rules of this Court, and hereby files and serves its Renewed Motion for Judgment as a Matter of Law or in the Alternative Motion for a New Trial or to Alter or Amend Judgment and Memorandum of Law in Support Thereof, as follows:

## RENEWED MOTION

1.      On November 3, 4, and 5, 2003, a jury trial was conducted regarding Plaintiff's complaints of racial discrimination, hostile work environment, and retaliation as proscribed by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et seq.* (hereinafter "Title VII").

2.      At the close of Plaintiff's case, and again at the close of all evidence,

- 1 -

Defendant moved the Court for a verdict in its favor due to Plaintiff's lack of evidence. **(Trial Transcript from November 4, 2003, Volume II, page 134, lines 3-21; Trial Transcript from November 5, 2003, Volume III, page 167, lines 14-17.)**

3.    The Court denied both of Defendant's motions for directed verdict.

4.    The jury was instructed as to the above-mentioned causes of action.

5.    The jury rendered a verdict finding Defendant liable only for unlawful retaliation under Title VII.

6.    As asserted at the close of Plaintiff's case-in-chief, and again at the close of all evidence, Plaintiff failed to adduce any evidence during the trial which would support a finding of liability against Defendant for unlawful retaliation.

7.    Plaintiff presented no evidence regarding his involvement in a "protected activity" as defined by Title VII.

8.    Plaintiff presented no evidence as to a particular adverse employment action that he claims occurred as a result of his alleged involvement in protected activity.

9.    Even if Plaintiff had presented evidence as to his involvement in protected activity and of suffering an adverse employment action as a result of having done so, Plaintiff failed to prove that the two events were related in any way and, thus, failed to establish a causal connection between the two events as required under Title VII.

10.    Even if Plaintiff had presented evidence of a causal connection between the two events as required under Title VII, Plaintiff presented no evidence to rebut Defendant's proffered legitimate, nondiscriminatory business reasons as to his workers' compensation leave and his termination from employment.

11.     Even if Plaintiff had presented evidence of a causal connection between the two events as required under Title VII, Plaintiff presented no evidence to refute Defendant's evidence that it would have taken the same employment actions notwithstanding Plaintiff's involvement in protected activity.

12.     Given the utter lack of record evidence adduced during the trial to support Plaintiff's Title VII retaliation claim, Defendant timely moved for a judgment as a matter of law and the claim, therefore, should not have been submitted to the jury.  Plaintiff clearly failed to prove a prima facie case of unlawful retaliation and the jury's verdict with regard to Defendant's liability for unlawful retaliation should not be allowed to stand as it clearly is not based upon any evidence offered at trial through witnesses or exhibits.

13.     Assuming *arguendo* that Defendant's liability for unlawful retaliation was supported by competent substantial evidence at trial, the jury assessed damages against Defendant which are clearly not supported by any record evidence.  The damage award of the jury should, therefore, either be remitted or a new trial should be ordered on the issue of back pay and compensatory damages.

14.     The verdict form, provided to the jury, read in relevant part: "Do you find by a preponderance of the evidence . . . [t]hat the Plaintiff should be awarded damages to compensate for a net loss of wages and benefits *to the date of trial*?" (emphasis added). The jury rendered a verdict that Plaintiff should be awarded damages to compensate for his net loss of wages and benefits to the date of trial in the amount of $600.000.00.

14.     The only evidence presented during the trial as to any particular wages and benefits lost by Plaintiff from the date of his discharge (April 17, 2000) to the date of trial (November 3, 2003) was during Defendant's cross-examination of Plaintiff.  During that examination Plaintiff testified that he was earning approximately $28,500.00 annually at the time of the termination of his employment at CCA.  **(Trial Transcript, Volume II, page 49, lines 4-10.)**  Plaintiff also stipulated to the fact that he had not been employed by CCA since April 17, 2000.  **(Trial Transcript from November 3, 2003, Volume I, page 127, lines 23-25.)**

15.     Other than this very limited evidence, there was no other evidence adduced at trial that could have supported Plaintiff's request for any particular money damages or from which the jury could otherwise determine the proper amount of Plaintiff's net loss of wages and benefits to the date of trial.  Nonetheless, the jury awarded Plaintiff $600,000.00, purportedly for his alleged lost wages and benefits from April 17, 2000, through the date of trial.  This award is clearly erroneous, given the lack of evidence supporting the award and the express wording of the verdict form.

16.     Additionally, Plaintiff offered no credible evidence during the trial with regard to any emotional distress he might have suffered as a result of Title VII retaliation.  Nevertheless, the jury erroneously awarded Plaintiff $150,000.00 for emotional pain and mental anguish, an award which is not supported by any evidence either of a compensable harm suffered by Plaintiff or connecting any alleged wrongdoing on Defendant's part to any emotional pain or mental anguish that Plaintiff may have

suffered. Plaintiff is required to offer evidence to establish a factual entitlement to such damages and there was clearly no basis for the jury to have awarded such damages.

17. The jury either ignored the Court's instructions or misunderstood them in all essential respects. The jury's finding as to liability was contrary to the evidence and the jury's damages awards are not supported by record evidence.

18. Plaintiff, proceeding *pro se*, made improper closing arguments to the jury. Plaintiff misrepresented the evidence in the case, and more critically argued facts that were not in evidence. Plaintiff's improper closing arguments confused the jury.

WHEREFORE, Defendant Corrections Corporation of America respectfully hereby moves this Court to grant its Renewed Motion for Judgment as a Matter of Law and to enter a judgment for Defendant as to Plaintiff's Title VII retaliation claim. In the alternative, Defendant hereby moves this Court to alter or amend the jury's award of damages against Defendant as the amounts awarded in the jury's verdict are not supported by any record evidence. Alternatively, Defendant hereby moves this Court to either order a new trial of Plaintiff's Title VII retaliation claim or to order a new trial limited to the issue of Plaintiff's entitlement to economic damages with respect to his Title VII retaliation claim.

## MEMORANDUM OF LAW

Pursuant to Rule 3.01 of the Local Rules of this Court, CCA submits its Memorandum of Law in support of its Renewed Motion for Judgment as a Matter of Law or in the Alternative Motion for a New Trial or to Alter or Amend Judgment (Remittitur), as follows:

# I.    INTRODUCTION

The jury's finding of Title VII retaliation is erroneous, as there is no record evidence to support the jury's finding of liability with respect to this claim. Plaintiff's closing argument was improper in several substantial respects. Plaintiff made numerous statements during his closing argument that were not supported by the evidence in the record, including statements concerning economic and non-economic damages allegedly suffered by him that were not proved by admissible evidence. Plaintiff's closing argument misled the jury and affected CCA's substantial rights. As a result, the jury erroneously awarded Plaintiff economic damages that are not supported by record evidence. Plaintiff failed at trial to rebut CCA's legitimate nondiscriminatory business reasons for the employment actions complained of in the litigation. Consequently, Plaintiff's retaliation claims should never have been submitted to the jury in the first instance. Plaintiff failed at trial to refute CCA's evidence that it would have taken the same employment actions with respect to him even in the absence of a discriminatory motive. The jury's verdict in favor of Plaintiff to the contrary is not supported by evidence in the record.

The jury demonstrated confusion during its deliberations about the proper application of Title VII law to Plaintiff's retaliation claim. The jury demonstrated confusion over its proper role during its deliberations by initially improperly deciding the questions presented to it for decision in the special verdict form; by failing to elect a foreperson before commencing deliberations; by requesting a copy of the Title VII statute during its deliberations; and, by ignoring the Court's charge and the instructions on the

applicable law. The jury further demonstrated confusion over the questions presented to it for decision by awarding Plaintiff economic and compensatory damages in a manner contrary to this Court's instructions on the proper measure of any such damages to which Plaintiff might be entitled under Title VII.

Plaintiff failed to present evidence to support the verdict he received from the jury in this proceeding. Plaintiff's only evidence presented during the trial consisted of his recitation of his version of a litany of events that occurred during the last several months of his employment. Plaintiff's trial testimony was laced with unsubstantiated opinion and speculation. Plaintiff additionally called as his only trial witness Fred Lawson, the present Warden of the Lake City Correctional Facility. Warden Lawson was not the Warden of the facility at any time relevant to any of Plaintiff's claims in this litigation. No evidence was proffered during Plaintiff's case-in-chief that amounted to a finding of retaliation or that supports the jury's award of monetary damages to Plaintiff. Although a Court may not interfere with a jury's fact-finding role, it can and must step in if the jury exceeds its authority by returning a verdict for which no basis exists in the record. *Parfait v. Central Towing, Inc.*, 667 F.2d 1189 (5th Cir. 1982).

## II.    ARGUMENT AND AUTHORITIES

**A. The Legal Standard for Entering Judgment as a Matter of Law.** A party is entitled to judgment as a matter of law "[i]f during a trial by jury [the opposing] party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for [the opposing] party on that issue." Fed.R.Civ.P. 50(a)(1). Under Rule 50, a Court considers the evidence in the light most favorable to the non-

movant and grants all reasonable inferences in favor of the non-movant. Nonetheless, a non-movant must present more than a mere scintilla of evidence. *See, e.g., Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000). A Court should deny a motion for judgment as a matter of law "only if reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." *Id.* (internal quotations omitted).

**B.  The Trial Record Does Not Support Title VII Retaliation Liability.** To establish a prima facie case of unlawful retaliation under Title VII, a plaintiff must show that he participated in an activity protected by Title VII; suffered an adverse employment action; and, there is a causal connection between the participation in the protected activity and the adverse employment decision. *Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000), *cert. denied,* 531 U.S. 1076 (2001).

1.    **Plaintiff Did Not Engage in Protected Activity.** Plaintiff claimed at trial that he was retaliated against as a result of his engagement in Title VII protected activity or activities. He did not, however, present any evidence specifically identifying what the protected activity was that he claimed he was engaged in or specifically how he claims he was retaliated against for engaging in that activity.

**Internal Grievances Are Not Protected Activity.** Although certainly not clear from the record, Plaintiff may have been attempting to prove his retaliation claim by asserting that certain written internal grievances he submitted to CCA officials in June, July and August of 1999, constituted protected activity. Examination of those grievances (Defendant's Exhibits 38, 40, and 41) uncontrovertedly demonstrates, however, that none

of them were sufficiently specific so as to place CCA on notice that Plaintiff was complaining of race discrimination in employment. Since this is so, filing the internal grievances does not warrant protection under Title VII.

The Eleventh Circuit recognizes that internal grievances may, under certain factual circumstances, constitute Title VII protected activity. See, for example, *Rollins v. State of Florida Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989). In order to be protected activity, however, those internal grievances must to be related to the protections granted by Title VII. *Id.* at 400. The grievances submitted by Plaintiff during the Summer of 1999 complained merely of generic harassment, without any reference to any protected category. *See* Defendant's Exhibits 38, 40, and 41.

Additionally, even if Plaintiff's internal grievances were considered to be Title VII protected activity, the internal grievances were so outrageous in nature and pursued by Plaintiff in such a hostile and disruptive manner that, as a mater of law, they are not within the scope of Title VII's protection. *See, Rollins, supra.* In each of Plaintiff's Summer of 1999 grievances, he stated that the removal of the warden, the assistant warden and the chief of security was the relief he was seeking by filing the grievances. **(Trial Transcript, Volume II, page 15, line 25; page 16, lines 1-2; and page 20, lines 21-23.)** The outrageous nature of the relief sought through Plaintiff's internal grievances renders those grievances outside the protection of Title VII. If the conduct claimed to be giving rise to Title VII protection is outside the scope of protection of the statute, then the employee's conduct is properly deemed an independent, legitimate basis for an otherwise protected adverse employment action. *Id.* at 401.

**Plaintiff's EEOC Charges, While Admittedly Protected Activity, Do Not Support A Finding of Retaliation.** Prior to the commencement of the trial, Plaintiff stipulated that he filed a total of three (3) Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against CCA during the final months of his employment, and that the first of these Charges was not filed until September 8, 1999. **(Trial Transcript, Volume I, page 128, lines 1-4.)** The only adverse employment actions that could possibly have been considered as retaliatory, which occurred after the Plaintiff filed the first of these charges (September 8, 1999), were the placement of Plaintiff on workers' compensation leave following his injury on September 16, 1999 and the subsequent termination of his employment on April 17, 2000. Every other possibly adverse employment action which Plaintiff identified during the course of the trial predated the date of his filling of the first of his EEOC Charges. **(Trial Transcript, Volume I, page 133-179.)** The trial record is devoid of any evidence to support a jury finding that either of these two events was related to Plaintiff's engagement in protected activity. Plaintiff did not provide the jury with any evidence from which it could reasonably conclude that anyone involved in either of these decisions was even aware that he had filed Charges of Discrimination or harbored any animus toward him for having done so. The only possible explanation is that the jury inferred such knowledge, but the evidence introduced at trial does not support such a conclusion.

  **2.**  **Plaintiff Did Not Suffer Any Adverse Employment Action.** In *Gupta v. Florida Board of Regents, supra*, the Court instructs that determining whether an action is sufficient to constitute an adverse employment action for purposes of a Title VII

retaliation claim must be decided on a case-by-case basis, using both a subjective and an objective standard. 212 F.3d at 583 (discussing adverse employment actions in the context of a claim of sexual harassment). The Court there instructs that conduct which falls short of an ultimate employment decision must meet some threshold level of substantiality in order to be cognizable under Title VII's anti-retaliation clause and that in evaluating what actions meet that required level of substantiality, Courts generally recognize that Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace. *Id.* at 583.

**Workers' Compensation Leave Is Not An Adverse Employment Action.** Plaintiff attempted at trial to claim that he suffered an adverse employment action when he was allegedly "forced" to take workers' compensation leave. **(Trial Transcript, Volume I, page 170, lines 22-25; and page 171, lines 1-5.)** The placement of an injured worker on workers' compensation leave is not, without more, an adverse employment action, as a matter of law.

Prior to the commencement of the trial, Plaintiff stipulated to the following facts: "Plaintiff claims he suffered an injury during the course of his employment on September 16, 1999." **(Trial Transcript, Volume I, page 128, lines 23-24.)** "Harris was thereafter on leave from work from September 19, 1999 until March 13, 2000. While on leave Harris received medical and wage loss benefits from CCA's workers' compensation insurance carrier." **(Trial Transcript, Volume I, page 128, line 25; and page 129, lines 1-4.)** Without the introduction of evidence at trial by Plaintiff indicating any improper motive on CCA's part, the undisputed fact that Plaintiff was injured while on the job

justified CCA's decision to place Plaintiff on workers' compensation leave. The leave was not "forced" and was not an adverse employment action, but rather was a natural result of Plaintiff having suffered an on-the-job injury that restricted him from performing his full time job duties.

It was undisputed at trial that the workers' compensation carrier was the entity approving or disapproving of Plaintiff's medical treatment, not CCA. **(Trial Transcript, Volume II, page 29, lines 23-25; and page 30, lines 1-15.)** Plaintiff's return to work was controlled by the workers' compensation carrier; not CCA. **(Trial Transcript, Volume II, page 128; lines 15-18.)**

Chapter 440, Florida Statutes, generally requires that Plaintiff be placed on leave until such time as his authorized treating physician states that he is medically able to return to work. See, Section 440.09(1), Florida Statutes (2003): "The employer must pay compensation or furnish benefits required by this chapter if the employee suffers an accidental compensable injury or death arising out of work performed in the course and the scope of employment." *See also, Walton v. Johnson & Johnson Services, Inc.*, 203 F.Supp.2d 1312, 1325 (M.D. Fla. 2002), concluding that an employer's instruction to an employee that she apply for workers compensation fails to qualify as an adverse employment action.

Plaintiff testified at trial that he was unable to point to any other shift supervisor who suffered an on-the-job injury who was treated differently under similar circumstances. **(Trial Transcript, Volume II, page 55, lines 20-23; and page 56, lines 4-9.)** In order for the leave to have been suspect, Plaintiff was required to prove

differential treatment.

Workers' compensation leave is a normal and ordinary employment action which, when viewed by an average person from an objective standpoint would not be considered an adverse employment action. In fact, Harris received certain economic benefits, in the form of a wage loss benefits, and medical benefits while on workers' compensation leave. **(Trial Transcript, Volume I, page 129, lines 1-4.)** Not all conduct by an employer negatively affecting an employee constitutes an "adverse employment action." *Gupta, supra*, 212 F.3d at 588.

**Plaintiff's Termination From Employment, While Admittedly An Adverse Employment Action, Does Not, Without More, Support A Finding Of Retaliation.**

Plaintiff stipulated that: "On March 13, 2000, Harris return to work at the Facility and Warden Eads attempted to discuss with him his employment with the Florida Department of Corrections while he was on workers' compensation leave. Harris refused advising Warden Eads 'that I could not discuss it at the meeting due to it being a workers' comp issue.' On March 23, 2000, Warden Eads wrote to Harris advising him that he needed to respond no later than April 4, 2000 to the questions concerning his employment with the Florida Department of Corrections. Harris wrote back to Warden Eads on March 31, 2000, informing him that 'legally, I have been advised to refuse to answer any and all questions at this time.' On April 17, 2000, Warden Eads notified Harris that his employment with CCA was being terminated because of his 'refusal to answer any and all questions' put to him concerning the workers' compensation investigation." **(Trial Transcript, Volume I, page 130, lines 9-13.)** Further, Plaintiff

testified at trial that he refused to participate in the investigation, which is clearly against company policy. **(Trial Transcript, Volume I, page 130, lines 5-8; and Volume II, page 46, lines 12-21.)** Warden Lawson testified that he was aware of other CCA wardens who have been terminated for failing to cooperate in investigations. **(Trial Transcript, Volume II, page 125, lines 20-24.)**

Since a legitimate nondiscriminatory business reason existed for Plaintiff's termination of his employment, the fact of Plaintiff's termination from employment, without more, does not support a finding of liability. Again, Plaintiff was asked to point to some other CCA official who engaged in similar conduct who was not terminated from employment. **(Trial Transcript, Volume II, page 57, lines 20-24.)** Plaintiff admitted that he could not identify a more favorably treated comparator. **(Trial Transcript, Volume II, page 57, line 25.)**

**Plaintiff Failed To Introduce Any Evidence At Trial Of Any Other Employment Action That Was Adverse.** During his closing argument to the jury, Plaintiff referred to a multitude of "events" which he claims occurred during the final months of his employment that he may believe constituted adverse employment actions. During his cross-examination while a fact witness in the case, however, Plaintiff admitted that he suffered absolutely no adverse employment action as a result of any of these other events. **(Trial Transcript, Volume II, page 36, lines 5-10.)** Thus, Plaintiff failed to introduce into the trial of this action any other evidence from which the jury could reasonably have concluded that Plaintiff suffered an adverse employment action as a result of his engagement in Title VII protected activity.

**3. Plaintiff Failed To Present Evidence To Establish A Causal Connection Between Any Protected Activity And An Adverse Employment Action.**

Plaintiff failed to demonstrate a causal connection between any alleged Title VII protected activity and any alleged adverse employment action taken with respect to him. In order to establish such a causal link, a Title VII plaintiff faces an increased burden of showing that his employer's actions "were motivated by an impermissible retaliatory or discriminatory animus." *Strickland v. Water Works and Sewer Board of City*, 239 F.3d 1199 (11th Cir. 2001), *citing King v. Preferred Technical Group,* 166 F.3d 887, 893 (7th Cir. 1999). At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected activity at the time it took the adverse employment action. *Gupta, supra*, 212 F.3d at 590. *See also Maricca v. Brown*, 171 F.3d 1364 (11th Cir. 1999) (discussing the second prong of a prima facie case that the employer must be aware of the activity).

A plaintiff's subjective belief standing alone, that some employment decision is causally connected to or motivated by the employer's discrimination against plaintiff's assertion of his protected rights is insufficient. *Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 391, 401 (7th Cir. 1997), *cert. denied*, 532 U.S. 1118 (1998) (discussed in the context of a motion for summary judgment) ("[I]f the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed.").

Plaintiff failed to present any evidence during the trial from which the jury could

reasonably have found that any member of CCA management involved in employment decisions affecting Plaintiff was even aware of his alleged engagement in Title VII protected activity. "Generally, a plaintiff may establish such a link through evidence that the . . . [adverse employment action] took place on the heels of protected activity." *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994). There was no admissible evidence presented by Plaintiff at trial that CCA took any adverse employment action against him "on the heels of his protected activity." Even had he presented such evidence, however, such evidence, standing alone, is insufficient as a matter of law to prove a Title VII retaliation claim. Retaliation cannot be based solely on temporal proximity. *Contreras v. Suncast Corp.*, 237 F.3d 756 (7th Cir.), *cert. denied*, 534 U.S. 824 (2001). *See also Blungart v. Bellsouth Telecommunications, Inc.*, 231 F.3d 791 (11th Cir. 2000).

> **4.      CCA's Proffered Legitimate Business Reasons For Its Various Employment Actions Affecting Plaintiff Were Not Rebutted During The Trial.**

Assuming *arguendo* that Plaintiff presented evidence to the jury which proved a prima facie case of Title VII retaliation, CCA then had the burden of producing (not proving) a valid, non-retaliatory reason for its employment actions concerning Plaintiff. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000). Once CCA produced such a reason, in order to prevail, Plaintiff must then have presented competent substantial evidence which rebutted CCA's proffered nondiscriminatory reasons, thereby proving that those proffered reason were actually pretexts for retaliation. *Id. See, for example, Sanchez v. Henderson*, 188 F.3d 740, 745-746 (7th Cir. 1999) *cert. denied*, 528 U.S. 1173 (2000).

CCA introduced unrefuted evidence at trial as to its legitimate nonretaliatory business reasons for placing Plaintiff on workers' compensation leave and for the eventual termination of his employment. Plaintiff's own trial testimony and that of Warden Lawson uncontrovertedly proved that Plaintiff was terminated from employment for failing to participate in the investigation into his conduct while out on workers' compensation leave. **(Trial Transcript, Volume I, page 129, lines 19-25; and Volume II, page 45, lines 7-17; and page 46, lines 12-21.)** Just as was the case in *Gupta*, once CCA proffered its legitimate business reasons for placing him on workers' compensation leave and for eventually terminating his employment, Plaintiff failed to thereupon present any evidence from which the jury could have reasonably found that CCA's reasons were pretexts for Title VII retaliation.

Plaintiff testified at trial that he refused to participate in the investigation which is clearly against company policy. Warden Lawson testified that he was even aware of CCA Wardens who have been terminated from employment for failing to cooperate in investigations. Thus, the actions taken by CCA were uncontroverted legitimate nondiscriminatory business reasons for terminating Plaintiff's employment.

**5. CCA's Evidence Was Uncontroverted At Trial That It Would Have Reached The Same Employment Decisions Despite An Alleged Improper Motive.** Assuming *arguendo* that Plaintiff's retaliation claim was supported by record evidence, Plaintiff nevertheless failed to negate CCA's affirmative defense that it would have reached the same employment decisions concerning Plaintiff notwithstanding any retaliatory motive.

CCA is entitled to a judgment as a matter of law because it proved by uncontradicted

evidence that it would have made the same decisions concerning Plaintiff even in the absence of discriminatory considerations. *Pulliam v. Tallapossa County Jail*, 185 F.3d 1182, 1184 (11th Cir. 1999); see *Desert Palace, Inc. v. Costa*, ___ U.S. ___, 123 S.ct. 2148 (2003). "Defendants in Title VII cases may prove as an affirmative defense that they would have reached the same employment decision even in the absence of bias." *Harris v. Shelby County Board of Educ.*, 99 F.3d 1078, 1084 (11th Cir. 1996) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 246 (1989) (plurality opinion).

### III.    Plaintiff Engaged In Improper Jury Argument That Contained Factual Assertions And Statements of the Evidence In The Case That Were Not Supported By The Record Evidence In The Case.

The jury verdict rendered in this case can only be explained by the jury's consideration of information that was not proper evidence in the case. Plaintiff's closing argument contained numerous representations and conclusory allegations that were not supported by any trial evidence. Statements made by counsel in the course of closing arguments are not evidence. *Liner. v. J.B. Talley and Co., Inc.*, 618 F.2d 327, 330 (5th Cir. 1980) cited with approval in *Green v. School Board of Hillsborough* County, 25 F.3d 974, 979 (11th Cir. 1994). "This is especially true when the precise issue on appeal is whether the action should have been dismissed at the close of the evidence and before closing arguments." *Green*, 25 F.3d at 979. The same rule should prevail when a party is proceeding pro se. In order to reach the verdict that it did, the jury must have improperly considered such information, construed it as "evidence," and rendered a verdict based upon Plaintiff's closing arguments. The jury's consideration of Plaintiff's improper

closing argument improperly tainted its deliberations and its verdict. The result was enormously prejudicial to CCA. The jury reached its verdict by improperly considering non-issues raised by Plaintiff's improper arguments and Plaintiff's closing arguments improperly guided the jury in its deliberations. *See e.g., Christopher v. Cutter Labs*, 53 F.3d 1184, 1195 (11th Cir. 1995) (commenting that counsel's strong reliance on an erroneous instruction in closing argument "improperly guided [the jury] in its deliberations").

Plaintiff's closing argument to the jury most certainly affected CCA's substantial rights. *See SEC v. Yun*, 327 F.3d 1263, 1283 (11th Cir. 2003). Under the circumstances, this Court's failure to grant CCA a new trial "would be inconsistent with substantial justice." *Id.*

## IV.    The Economic Damages Award By The Jury Is Not Supported By Record Evidence

The economic damages awarded by the jury must be set aside as they are not merely excessive; they are shocking. To allow the damages awarded by the jury to stand would be a miscarriage of justice. Despite the clear language on the verdict form regarding the proper method for assessing the correct amount of lost wages to which Plaintiff would lawfully be entitled to if he prevailed, the jury took it upon themselves to enter an excessive back pay award in the amount of $600,000.00. There is not a scintilla of record evidence to support a back pay award of that amount.

The jury's back pay award clearly exceeded the only limited evidence of Plaintiff's economic damages introduced during the course of the trial of this action. During his cross-

examination, Plaintiff testified that he was making approximately $28,500 per year in salary and wages from CCA when his employment was terminated on April 17, 2000. **(Trial Transcript, Volume II, page 49, lines 4-10.)** Approximately three and one-half (3 & ½) years elapsed between the date of Plaintiff's termination from employment and the trial of Plaintiff's claims. Additionally, Plaintiff admitted to working at the Department of Corrections for almost a year. The jury clearly exceeded the amount any reasonable person would have calculated as constituting three and one-half years of lost wages and benefits at $28,500 per year.

In *Copley v. Bax Global, Inc.*, 97 F.Supp.2d 1164 (S.D. Fla. 2000), the Court found that an award of nearly $500,000.00 for economic and non-economic damages was excessive in that it was not supported by the evidence and, thus, had to be reduced. The Court noted that the only record evidence concerning plaintiff's lost wages as a result of his termination and, therefore, the most plaintiff could have received in back pay, was $20,308.00. The Court concluded that the remainder of the compensatory damages awarded by the jury ($479,692.00) was apparently attributable to plaintiff's non-economic injuries (emotional pain and mental anguish). *Id.* at 1171.

The Court noted that when assessing the appropriateness of an award of compensatory damages, Courts look to the size of the award; the rational relationship between the award and the evidence adduced at trial; and, the amounts of awards in similar cases. *Id.* at 1172.

Plaintiff produced absolutely no evidence at trial regarding the actual amount of his economic damages. He did not present any evidence to the jury concerning any

periods of unemployment. He did not present any evidence concerning his current rate of pay with his current employer. Instead, Plaintiff waited until after the close of all evidence, during his closing arguments, to raise, for the first time in this trial, the issue of damages. Plaintiff then improperly argued to the jury that he was factually and legally entitled to economic damages, including emotional distress and mental anguish damages. During his closing arguments, Plaintiff asserted, without any record support, that he had been out of work for approximately two and one-half (2 & ½) years following the termination of his employment by CCA. **(Trial Transcript, Volume III, page 18, lines 2-7.)** Accepting as true Plaintiff's assertion that he was indeed unemployed for a period of two and one-half years, the maximum amount of back pay to which he reasonably would be entitled approximates $75,000.00; not the $600,000.00 awarded to Plaintiff by the jury. By waiting until the close of evidence to, for the first time, make assertions concerning his economic damages, Plaintiff was attempting to avoid CCA's cross examination concerning damages issues such as mitigation and proof of entitlement to any economic damages.

## V.    The Jury's Emotional Distress Award By The Jury Is Not Supported By Record Evidence

An award of compensatory damages for emotional distress must be supported by competent evidence concerning the injury. *Cary v. Piphus*, 435 U.S. 247, 264 (1978). In the trial of this action, Plaintiff submitted absolutely no evidence regarding the relationship between any particular mental distress which he attributed to retaliation. He presented no witnesses to testify (and to be subject to cross examination) regarding the

mental anguish and emotional distress he actually suffered. Instead of offering proof on this question, Plaintiff merely opined during his closing arguments about the hardships he suffered as a result of the termination of his employment and his period of unemployment thereafter. **(Trial Transcript, Volume III, page 10, lines 7-12; and page 18, lines 1-25.)** This is not competent substantial evidence to support the jury's award of $150,000.00 in emotional pain and mental anguish damages. In *Copley*, the Court reasoned that:

> The mental pain and suffering incurred by plaintiff was consistent with that which most individuals, with typical financial and family obligations, would feel if suddenly terminated, under ominous circumstances, from a job they had held for years. Reasonable people, and thus reasonable juries, could differ as to an amount that would compensate for such mental anguish; but, $479,692.00 [was] beyond the realm of reasonableness.

*Id.* at 1172.

The significant distinction between *Copley* and the instant action is that Copley actually presented some evidence in support of his emotional distress claim. *Id.* at 1172. Copley's wife testified at trial and was considered by the Court to have provided a factual basis for the jury to find that Copley had indeed suffered some mental anguish as a result of the defendant's illegal discrimination. *Id.*

In *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927 (5th Cir. 1996), the Fifth Circuit reversed compensatory damages awards to plaintiffs in a retaliation case, concluding that the plaintiffs' testimony regarding emotional distress was insufficient to

support more than a nominal damages award on such claims.  *Id.* at 940-41. The Court observed:

> In order to establish intangible loss, we recognize that *Carey* requires a degree of specificity which may include corroborating testimony or medical or psychological evidence in support of the damage award. *Carey,* 435 U.S. at 264, 98 S.Ct. at 1052. Hurt feelings, anger and frustration are a part of life. Unless the cause of action manifests some specific discernible injury to the claimant's emotional state, we cannot say that the specificity requirement of *Carey* has been satisfied.

*Id.* at 940.

The Court also noted that a number of its sister circuits "have recognized that a claimant's testimony alone may not be sufficient to support anything more than a nominal damage award." *Id.* at 938. *See also Biggs v. Village of Dupo,* 892 F.2d 1298, 1304-05 (7th Cir. 1990) (vacating compensatory damage award based upon plaintiff's statements that he was "affected emotionally and concerned over the idea of [his] family going through" the termination); *Erebia v. Chrysler Plastic Prod. Corp.,* 772 F.2d 1250, 1259 (6th Cir. 1985) (reversing compensatory damages award where sole evidence of emotional distress was plaintiff's statement that he was "highly upset" and "that [he] could only take so much"); *Gunby v. Pennsylvania Elec. Co.,* 840 F.2d 1108, 1121 (3d Cir. 1988) (reversing Section 1981 emotional damages award based on lack of supporting evidence).

In *Price v. City of Charlotte,* 93 F.3d 1241, 1250-57 (4th Cir. 1996), the Fourth

Circuit reached the same conclusion as did the *Patterson* Court. The jury awarded each plaintiff compensatory damages in a reverse discrimination suit. *Id.* at 1244. The Fourth Circuit reversed and awarded nominal damages of $1.00 to each because the only damage testimony was the plaintiffs' conclusory statements that they felt "embarrassed," "degraded," "betrayed," "disappointed," "devastated," and suffered "personal stress." *Id.* at 1254-1257. *See also, Mason v. Oklahoma Tumpike Auth.*, 115 F. 3d 1442, 1457 (10th Cir. 1997) (finding plaintiff's uncorroborated, conclusory testimony that he had experienced "depression," "estrangement from his family," and "distrust for others" insufficient for award of compensatory damages resulting in denial of new trial.)

In a similar vein, the Eleventh Circuit Court of Appeals in *Crawford v. Babbitt*, 186 F.3d 1322, 1327 (11th Cir. 1999), observed that a plaintiff's conclusory statements as to her emotional distress were insufficient to establish her entitlement to compensatory damages.[1]

The only "evidence" even arguably offered by Plaintiff during the trial of this action concerning alleged emotional injury was limited to Plaintiff's own self-serving,

---

[1] In *Crawford*, the employee filed a complaint of sex harassment and retaliation with her employer. *Id.* at 1324. Crawford had reported that the harassment "upset" her and she had required medical treatment for a bleeding ulcer and other physical problems as a result. *Id.* Crawford requested a hearing before an Equal Employment Opportunity Commission administrative judge. *Id.* The employer sought her medical records and the administrative judge warned Crawford that without them no compensatory damages would be awarded. *Id.* She did not submit the records. *Id.* Although the agency found Crawford had been subjected to sexual harassment and retaliation, it awarded her no compensatory damages. *Id.* at 1325. Crawford then filed suit in federal court under Title VII. *Id.* The district court dismissed Crawford's claim for compensatory damages, finding, *inter alia*, that she had failed to exhaust her administrative remedies when she did not submit the requested evidence. *Id.* at 1327. The Eleventh Circuit affirmed, describing Crawford's statements of her distress as a "paucity" of information upon which to resolve the issue of entitlement to compensatory damages. *Id.*

unsubstantiated argument during his closing arguments. Those arguments were merely conclusory statements bereft of record support. Plaintiff's argument, even if proper, was insufficient to establish his entitlement to compensatory damages. Plaintiff's argument did not address the duration or intensity of the alleged distress, nor did he indicate suffering any physical manifestations as a result of the alleged distress.

This paucity of record evidence to support the jury's emotional distress damage award fails to meet the minimum standards required by the Supreme Court in *Carey* to support an award of such compensatory damages. Further, as the circuit court decisions discussed above teach, more evidence than a plaintiff's bare conclusory allegations is necessary to warrant an award of such damages.

## III.   CONCLUSION

Judgment as a matter of law allows the trial court to remove cases or issues from the jury's consideration when "the facts are sufficiently clear that the law requires a particular result." *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000). CCA maintains that the utter lack of evidence presented during the trial of this case warrants a judgment in its favor as to Plaintiff's Title VII retaliation claim. Alternatively, CCA respectfully submits that it is entitled to a new trial on Plaintiff's Title VII retaliation claim or to a new trial on the issue of damages as to that claim.

Dated this 20 day of November, 2003.

Respectfully submitted,

By: _____
John E. Duvall
Florida Bar No. 503932

By: _____
Jennifer L. Watson
Florida Bar No. 0251940

FORD & HARRISON LLP
225 Water Street, Suite 710
Post Office Box 41566
Jacksonville, FL 32203
(904) 357-2000
(904) 357-2001 (facsimile)

Attorneys for Defendant Corrections Corporation
of America.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Defendant's Renewed Motion

For Judgment As A Matter Of Law Or In The Alternative Motion For New Trial Or To

Alter Or Amend Judgment (Remittitur) And Memorandum of Law In Support Thereof

has been served this 20 day of November, 2003, by first class United States mail upon

the following:

Michael G. Harris
Post Office Box 1624
Lake City, FL 32056-1624

Plaintiff proceeding *pro se*

_____
Attorney